IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Gerald Kozlevcar,                    :        Case No. 3:05 CV 07483

    Plaintiff,                       :

       v.                            :        MEMORANDUM DECISION AND
                                              ORDER
Tom Ahl Buick, Incorporated *dba* Tom Ahl    :
Buick-GMAC,
                                     :
    Defendant.

      The parties have consented to have the undersigned Magistrate conduct all proceedings and enter

judgment in this case filed pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C.

§ 621 *et seq*. and OHIO REV. CODE § 4112.  Pending is Defendant's Motion for Summary Judgment

(Docket No. 34), Plaintiff's Opposition (Docket No. 37) and Defendant's Reply (Docket No. 38).  For

the reasons that follow, Defendant's Motion for Summary Judgment is granted.

## FACTUAL BACKGROUND

      Plaintiff, born on March 19, 1944, was more than 40 years of age at all times relevant to this

dispute (Docket No. 1,¶ 10).  Defendant, a new and used car dealership, is incorporated under the laws

of the State of Ohio and operating in Lima, Allen County, Ohio.

      Plaintiff was employed by Graybar Electric for 23 years (Docket No. 29, 17:18-23).  He resigned

after having a disagreement with his supervisor about the way he "took care of" a customer (Docket No.

29, 18:1-5.).  Defendant subsequently employed Plaintiff on three separate occasions.  He was rehired

for the third time beginning in 1994 and ending with the termination at the heart of this dispute on January 3, 2005 (Docket No. 29, 15:5-17, 27, Docket No. 34, p 17).  Defendant hired him initially in 1986 to work in Ahl's Chrysler, Dodge and Plymouth store as a salesperson (Docket No. 29, 19:5-19).  Plaintiff's first term of employment was short—he was fired soon after he was hired due to personality conflicts with Kim Pettinger, the acting Sales Manager (Docket No. 29, 16: 4, 8-9).  In his opinion, the personality conflict was predicated on Pettinger's untruthfulness, failure to treat the customers well, addictions and his "two face-ness about religion" (Docket No. 29, 110:15-20).

In the meantime, Plaintiff was hired to work at Findlay Ford.  He requested his previous job and Kim Pettinger hired him again.  Plaintiff was fired again due to continuing personality conflicts with Kim Pettinger (Docket No. 29, 21:6-18; 26:8, 14-21).  In January 1994, Tom Ahl personally rehired Plaintiff to work for him as a salesman in the Buick-GMC store (Docket No. 29; 27:20-22).  Plaintiff worked for Defendant without interruption from January 1994 to August 2004, in the capacity of New Car Manager and Sales Manager (Docket No. 29, 30:5-8).  On August 1, 2004, Keith Jordan relieved Plaintiff of his duties as Sales Manager and hired Kevin King, a 25- year old former furniture salesperson to replace him (Docket No. 29, 30:9-12; 32:14-20; Docket No. 47, 7:2-6; 10:10-14).

Plaintiff's employment was not without incident.  William Cook, a fellow employee and internet manager, described Plaintiff as a "love him or hate him kind of guy", and he frequently ran into conflicts with both co-workers and customers (Docket No. 31, 11:25, 12:13-19).  Defendant Ahl testified that Plaintiff had trouble meeting customers on a "face-to-face basis" in a friendly way (Docket No. 30; 12:18-25, 13:1-6).  Plaintiff was described by co-workers as "moody," "short, brief [and] to the point" and "abrasive" (Docket No. 31, 12:13; Docket No. 32, 14:2-5).  Plaintiff conceded that he was sometimes "curt" and "abrasive" with customers (Docket No. 29, 60:5-11).  At the same time, his co-workers

2

described him as "knowledgeable," "helpful" and "easy to approach" (Docket No. 32, 12:22-23, 12:25-13:1; Docket No. 49, 9:11). Plaintiff described himself as "kn[owing] product very well" and "work[ing] with GM very well" (Docket No. 29; 59:5-6). Still, by August 2004, Defendant and Keith Jordan were both ready to discharge Plaintiff from the terms of his employment (Docket No. 30, 8:3-10). Defendant did not believe that Plaintiff was selling consistently with the generally accepted measure of performance which included selling twelve cars per month (Docket No. 29, 19:22-24, Docket No. 31, 10:1-3). In fact, Plaintiff had only sold eighteen cars in the last three months of his employment (Docket No. 30, 11:6-8). Keith Jordan testified that the desire to discharge Plaintiff was based on his failure to produce and his attitude (Docket No. 33, 8:12-25).

Plaintiff denied responsibility for the drop in sales, claiming that the drop was due to his demotion—he had fewer opportunities to attract customers when he took over his new responsibilities as salesman. He had given many of his customers to other salespersons while working for years in management. He was training Kevin King throughout this period and was reduced to "fighting for [customers] on the lot" (Docket No. 29, 53:16-22). Defendant denies this contention, claiming that Plaintiff had many loyal customers and had "his own book of business" from which to draw (Docket No. 30, 12:4-10). A "Sales Comparative" prepared by Defendant shows that in the last quarter of 2004, two other salesmen younger than Plaintiff, William Gross and Scott Jackson, failed to meet the informal quota of twelve cars per month, although William Gross was not hired until November 1, 2004 (Docket No. 30, Plaintiff's Exhibit 2). Neither of those salesmen were fired or demoted as a result of their failure to sell cars. The "Sales Comparative" also shows that Terry Kristoff, who is older than Plaintiff, also failed to meet the informal quota. Like William Gross and Scott Jackson, Terry Kristoff was neither fired nor demoted (Docket No. 30, Plaintiff's Exhibit 3).

Tom Ahl and Keith Jordan also testified that there was a productivity issue with Plaintiff's use of the Autobase computer database the dealership had employed.  Plaintiff was responsible for monitoring the database of potential customers and to contact those customers about buying new cars (Docket No. 30, 13:7-21).  Lou Ann Lawley, Defendant's employee for 27 years, testified that Plaintiff was altering the database to make it appear that sales personnel had contacted customers, when in fact no such contacts had been made (Docket No. 44; 7:10-24).  When management became aware of productivity issues, they would often informally discipline the employee by talking to them privately.  Plaintiff's productivity problems led to him being "talked to…more times than most employees" (Docket No. 44, 19:18-19).

De spite  these productivity concerns, Keith Jordan testified that the decision to demote and later to terminate Plaintiff was "based a little bit more on attitude" (Docket No. 33, 8:24-25).  Plaintiff was not helping "the guys" sell cars, teaching "the guys" or promoting the new car department (Docket No. 33, 9:8-13).  Terry Kristoff testified that "there were times [they] bumped noses" (Docket No. 46, 11:4-5).

Plaintiff contends that his discharge was motivated by Tom Ahl's need to repopulate the work environment with younger employees.  To that end, Defendant intentionally violated the federal and state discrimination statutes.  A few days prior to the hiring of Kevin King, Tom Ahl told Plaintiff that the company was having a "youth movement" (Docket No. 29, 35:23).  Tom Ahl testified that this comment was intended to reflect the changing nature of the business—that younger people, who are often more adept at the newest technologies, are becoming more essential to the business (Docket No. 30, 19:10-24).  Plaintiff believes that the youth movement comment was *only* directed toward management—not sales personnel (Docket No. 29, 54:8-9).  Plaintiff testified that this is the only time age was ever mentioned

4

by Tom Ahl in reference to his employment (Docket No. 29, 45:20-23).  Lou Anne Lawley testified likewise, saying that she had never heard any member of the management voice concerns about Plaintiff's age (Docket No. 44, 11: 23-25, 12:1-7).

From August 1 to October 1, 2004, Plaintiff's compensation remained the same (Docket No. 29. 38:19-22).  On October 1, 2004, Plaintiff was demoted from new car manager to salesperson and on January 3, 2005, he was terminated (Docket No. 29, 28:3-4, 38:23-24, 39:1).  Tom Ahl stated that the problem with Plaintiff was one of effort, not productivity (Docket No. 30, 28:21-25, 29:1-3).  Jordan similarly testified that the reason for the termination was Plaintiff's overall attitude toward his fellow co-workers and toward Defendant's customers (Docket No. 33, 8:24-25).  Plaintiff even testified that "Tom Ahl didn't fire me due to my age particularly" (Docket No. 29, 77:1-2).  Instead, Plaintiff believes that he was fired because "Kevin King would never grow as long as I was still there" (Docket No. 29; 77:3-4).

In the two years prior to Plaintiff's termination, two younger workers were terminated due to lack of sales.  At the time of their termination on December 13, 2002 and November 25, 2003, Jack Nichols was 35 years old and Timothy Burrows was 36 years old, respectively (Docket No. 32, Exhibit 2, ¶ 6). Soon after Plaintiff's termination in 2005, 28 year old Chad Eversole began working as a salesman in the Buick dealership (Docket No. 34, Exhibit 1, ¶ 15).  Eversole had been interviewed in December 2004 and he did not begin working until January due to an ice storm. (Docket No. 34, Exhibit 2, ¶ 7).  Ahl testified that he was hired to "augment the sales staff [and] not to replace anyone" (Docket No. 34, Exhibit 1, ¶ 15).  Chad Eversole was terminated ninety days later due to his lack of sales.  Defendant did not hire another salesman until June of 2005 (Docket No. 34, Exhibit 1, ¶ 3).

On August 17, 2005, Plaintiff filed a charge of discrimination on the basis of age with the United

5

States Equal Employment Opportunity Commission (EEOC), charge number 22A-2005-03776 (Docket No. 1, Exhibit A).  Plaintiff filed a timely complaint on December 21, 2005 in this Court alleging age discrimination in violation of the ADEA, Ohio state law, and Ohio public policy.  Pending is Defendant's Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

The summary judgment procedure is designed to dispose of cases wherein there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56. Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED R. CIV. P. 56(c); *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (*citing LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993)).

The moving party bears the initial burden of establishing an absence of evidence to support the non-moving party's case.  *Celotex Corporation v. Catrett*, 106 S. Ct. 2548, 2552-53 (1986). In the face of a defendant's properly supported motion for summary judgment, the Plaintiff cannot rest on his or her allegations to get to the jury without significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff.  *Id.* at 2512.

To oppose a motion for summary judgment successfully, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 106 S. Ct. 1348, 1355 (1986).  In determining if the facts are material, the court must look to the substantive law.  The evidence of the non-movant is then taken as true and all justiciable

6

inferences are drawn in his or her favor.  *Anderson,* 106 S. Ct. at 2513 (*citing Adickes v. S.H. Kress & Co.*, 90 S. Ct. 1598, 1609-1610 (1970)).  The Court must refrain from resolving conflicts in the evidence or making credibility determinations.  *Id*.  If, after deciding, the dispute about a material fact is genuine, summary judgment should be denied.

## DISCUSSION

Plaintiff's complaint alleges four causes of action.  First, he seeks relief for violations of ADEA as it pertains only to his termination on January 3, 2005.  Second, he seeks relief for Defendant's violation of OHIO REV. CODE § 4112.02(A) (2007) made actionable under OHIO REV. CODE § 4112.99.  Third, he claims that he was demoted twice in violation of the public policy of the State of Ohio proscribing age discrimination in employment.  Fourth, he argues that Defendant owed him a duty of care to safeguard his employment position and that, by terminating him, Defendant did breach that duty of care, causing injury.

Defendant is seeking summary judgment on each of Plaintiff's four claims for the following reasons.  First, Plaintiff's claim that he was twice demoted is barred by the 300 day statute of limitations.  Second, Plaintiff cannot establish a prima facie case for discrimination based on age.  Third, Plaintiff's age discrimination claims filed pursuant to Ohio statute are barred by the election of remedies and the applicable statute of limitations.  Fourth, Plaintiff's negligence claim is not cognizable under Ohio law.

## I.    Plaintiff's First Claim:  ADEA

Plaintiff asserts that his first claim pertains only to his termination on January 3, 2005.  He was terminated because of his age and replaced by a substantially younger salesperson.  Defendant concedes that this Court has jurisdiction of actions properly brought under 42 U.S.C. § 621 *et seq*., and that it is an "employer" within the meaning of Section 11(b) of the ADEA, 29 U.S.C. § 630(b), and within the

7

meaning of Title VII of the Civil Rights Act of 1964 (Title VII) (Docket No. 3). Defendant argues, however, that as a matter of law, Plaintiff cannot make a prima facie case for discrimination based on age. The ADEA broadly prohibits age discrimination in the workplace based on age. Specifically, it is unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623 (Thomson/West 2007). These prohibitions shall be limited to persons who are at least 40 years of age. 29 U.S.C. § 631(a) (Thomson/West 2007).

The ADEA can be compared to the EEOC Subchapter of Title VII, in terms of its purpose and prohibitions, and thus analogies to cases arising under Title VII are often helpful in age discrimination cases. Specifically, the analytical framework used in Title VII cases that the Supreme Court first articulated in *McDonnell Douglas Corporation v. Green*, 93 S. Ct. 1817 (1973) and later refined in *Texas Department of Community Affairs v. Burdine*, 101 S. Ct. 1089 (1981) is generally apposite to ADEA cases when plaintiff has alleged indirect or circumstantial evidence. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078 (6th Cir. 1994). However, if the plaintiff can establish direct evidence of discrimination, he or she need not go through the *McDonnell Douglas* burden-shifting analysis. *Mitchell v. Vanderbilt University*, 389 F.3d 177, 181 (6th Cir. 2004), *Rowan v. Lockheed Martin Energy Systems*, 360 F.3d 544, 548 (6th Cir. 2004) (*citing Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1248-49 (6th Cir. 1995)).

Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (*citing Jacklyn v. Schering-Plough*

8

*Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999)).  Circumstantial evidence is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred.  *Id.* (citing *Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997)).          This analytical framework, when applied to the instant case, requires that the Court grant the Defendant's request for summary judgment due to Plaintiff's failure to produce direct or circumstantial evidence of discrimination.

### a.        Direct Evidence of Age Discrimination.

Direct evidence is evidence that proves the existence of a fact without requiring any inferences. *Manzer,* 29 F.3d at 1081; *Laderach v. U-Haul of Nw. Ohio,* 207 F.3d 825, 829 (6th Cir. 2000); *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999).  This evidence cannot be based on vague, ambiguous, or isolated remarks.  *See Phelps v. Yale Sec., Inc.,* 986 F.2d 1020, 1025 (6th Cir. 1993).  Instead, the evidence must require the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.  *Jacklyn,* 176 F.3d at 926.

In *Rowan,* the court held that several statements made by various members of Lockheed Martin's management about the general need to lower the average age of their workforce did not constitute direct evidence of age-based discrimination.  *Rowan,* 360 F.3d at 548.  Similarly, in *Duggan v. Orthopaedic Inst. of Ohio, Inc.,* 365 F. Supp. 2d 853 (N.D.Ohio, 2005), the court held calling an employee "an old fart" in a social situation is too abstract a statement to demonstrate that age was a motivating factor in terminating plaintiff.  *Duggan,* 365 F. Supp. 2d at 859.

Temporal proximity to an adverse employment action is often important in assessing whether a particular remark is direct evidence of discrimination.  *DiCarlo v. Potter,* 358 F. 3d 408, 418 (6th Cir. 2004).  Because a large temporal gap between the remark and the adverse employment action requires

9

an inference by the court to conclude that the two are related, a gap that is too large will be interpreted as circumstantial by the court.  *See Phelps v. Yale Sec., Inc*., 986 F.2d at 1026 (holding that a year-long gap was too long to support the conclusion that the alleged remark influenced the employer's termination decision).  However, if the employer's remarks are strongly discriminatory in nature, they may create a material issue as to causation between the employer's animus and the adverse employment action, whether temporal proximity exists or not.  *Neason v. General Motors Corp*., 409 F. Supp. 2d 873, 882 (E.D. Mich. 2005).

These cases provide guidance to this Court in the present case.  Plaintiff's only allegation of direct evidence of age discrimination is Defendant's comment that "we are having a youth movement" (Docket No. 29; 35:16).  This comment was made on September 15, 2004 (Docket No. 29; 35:8) and occurred more than three months before Plaintiff's termination from Tom Ahl Buick.  This three month gap does not support a conclusion that the remark and Plaintiff's subsequent termination are linked in any way, especially considering the vague nature of the comment.  The attenuation present here might be lessened if the comment were not so vague.  Like the comments in *Rowan* (referencing a need to lower the overall age of the company's employees) and *Duggan* (calling plaintiff an "old fart), Defendant's comments here are simply too ambiguous for the Court to conclude that a discriminatory animus was behind Plaintiff's termination without making a significant inferential leap.  Even if this comment could be construed as direct evidence, Plaintiff testified that he believes the comment was directed at management—not the sales department.  Because this Court is only considering Plaintiff's termination from the sales department and *not* his demotions from the managerial staff, the comment seems even less significant.  Plaintiff has not presented evidence that demonstrates the required nexus between the comment and his termination.  Because the Court may not draw conclusions based on

10

inferences, Plaintiff's failure to assert this evidence means that his claim cannot succeed under the "direct evidence" analysis.

### b.       Circumstantial Evidence of Age Discrimination

If the employee lacks direct evidence of discrimination, the *McDonnell Douglas* paradigm provides a burden shifting regime that begins with the employee having to establish a prima facie case. *Wexler, supra,* 317 F.3d at 574 (*citing Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 350 (6th Cir. 1998)).  In order to establish a prima facie case of discrimination, a plaintiff must show:  1) that he is a member of a protected group, 2) that he was subject to an adverse employment decision, 3) that he was qualified for the position, and 4) that he was replaced by a person outside of the protected class." *Grosjean v. First Energy Corp*., 349 F.3d 332, 335 (6th Cir. 2003) *cert. denied* 124 S. Ct. 2069 (2004) (*citing Kline,* 128 F.3d at 349; Talley, supra, 61 F.3d at 1246).  If the employee meets these criteria, the employer may respond by offering a legitimate, non-discriminatory reason for the adverse employment action at issue.  *Id.*  Assuming that such a response is made, the employee then bears the burden of rebutting this proffered reason by proving that it was a pretext designed to mask age discrimination.  *Id.*

Plaintiff clearly meets the first two requirements of the *prima facie* case.  Defendant was over 40 years of age at the time he was terminated.  A closer examination is required for the other two requirements.

Plaintiff has difficulty meeting the third prong of the *McDonnell Douglas* test.  Plaintiff must show that he was qualified for his position.  In order to show that he or she is qualified, a plaintiff must prove that he or she was performing his or her job at a level which met the employer's legitimate expectations. *Godfredson v. Hess & Clark*, 996 F. Supp. 730, 737 (N. D. Ohio 1998) *aff'd* 173 F. 3d 365 (6th Cir. 1999).  When assessing if the employee has met his or her employer's legitimate expectations

11

at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the non-discriminatory reason produced by the defense as its reason for terminating plaintiff. *Wexler, supra,* 317 F. 3d at 575-576 (*citing Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000)). That is, the court may not conclude that plaintiff was not qualified for his or her position based solely on the reason given by defendant for her or his termination. *Id.* To do so would be to set the burden much too high and to conflate the distinct stages of the *McDonnell Douglas* test. *Id.* The court should focus on a Plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job. *Wexler*, *supra*, 317 F. 3d at 575.

Examining the evidence, it becomes clear that Plaintiff has not satisfied the qualification prong of the test. At the time of his termination, he had over ten years of continuous experience in the car sales industry (Docket No. 29 27:20-22). It is undisputed that he had in-depth knowledge of the product and that he possessed the skills necessary to sell cars (Docket No. 46, 11:19-20; Docket No. 32, 12:22-23). However, the Magistrate cannot rule out that Plaintiff was fired for inadequate job performance as a salesperson, the job that Plaintiff held three months prior to his discharge. Defendant presents strong probative evidence the Plaintiff was not doing his job within the Defendant's expectations. Defendant contends that Plaintiff sold only seven cars in November and seven cars in December. He failed to approach the customers or work with the customers to obtain a sale. Defendant also claimed that Plaintiff failed to participate in the "rotation or up system" and that he dealt with several complaints from customers regarding his sales (Docket No. 30, 11:6-21).

According to Defendant, Plaintiff refused to meet customers on a face-to-face basis or work effectively with the computer (Docket No. 30, 13:2-6; 13: 8-16). Such expectations are compatible with an employer's objective expectations of a salesperson. Plaintiff's conclusory remarks that he had the

requisite skill, experience and product knowledge sufficient to perform as a salesperson or sales manager is not competent evidence that he was qualified within the meaning of the law.

The fourth prong of the *McDonnell Douglas* test requires that plaintiff be replaced by a younger person. Plaintiff contends that he was replaced by Kevin King, a younger individual, in the position of sales manager and new car manager (Docket No. 29, Exhibit A). Defendant admitted that he hired Kevin King to replace Plaintiff (Docket No. 30, p. 15). Plaintiff has clearly satisfied the fourth prong of the prima facie case.

Alternately, Plaintiff can satisfy the fourth element of his prima facie claim of age discrimination by providing evidence that similarly situated non-protected employees were treated more favorably. The Magistrate need not address this contingency since Plaintiff has clearly established the fourth element of his claim.

Although Plaintiff can satisfy the first, second and fourth elements, Plaintiff did not establish that he was qualified for the position from which he was fired. Accordingly, Plaintiff has failed to establish a prima facie case for discrimination based on age.

The Magistrate concludes that Plaintiff has not met the burden of raising a genuine issue of material fact as to whether he was wrongfully discharged based on age. Defendant's Motion for Summary Judgment must be granted as to this claim.

## II.    Plaintiff's State Law Claim

Plaintiff's second claim is brought pursuant to OHIO REV. CODE Ann. § 4112.02(A) made actionable under OHIO REV. CODE Ann. § 4112.99 (Docket No. 1, ¶ 15). Section 4112.02(A) makes it unlawful for any employer to discharge a person without just cause because of the age of that person. OHIO REV. CODE § 4112.99 contains no limitations period. Setion 4112.02(N) provides that an aggrieved

13

individual may enforce his rights under Section 4112.02(A) by instituting a civil action within one hundred eighty days after the alleged unlawful discriminatory practice occurred.  Section (N) also provides that a plaintiff who asserts a cause of action under OHIO REV. CODE § 4112.02 is barred from instituting a civil action under Section 4112.14 and from filing a charge with the commission under Section 4112.05.  Sections 4112.02 and 4112.14 are mutually exclusive causes of action.

Plaintiff's demotions are the only alleged injuries brought under his state law claim.  Plaintiff was first demoted on August 1, 2004, and was demoted again on October 1, 2004 (Docket No. 1, ¶ 15).  He filed his complaint with this Court on December 21, 2005, 446 days after his second demotion.  The issue, then, is whether his claim should be barred by the 180-day limitations period articulated in OHIO REV. CODE § 4112.02(N) or whether it is not subject to any limitations period under OHIO REV. CODE § 4112.99.

In *Bellian v. Bicron Corp.*, 69 Ohio St. 3d 517, 634 N.E.2d 608 (1994), the plaintiff alleged a similar cause of action under Section 4112 and, specifically, pursuant to Section 4112.99.  As here, the plaintiff also failed to bring the cause of action within the 180 day period required by Section 4112.02 but claimed that he was not subject to a limitations period due to the absence of such a requirement in Section 4112.99.  The Ohio Supreme Court rejected this contention.  It found that the only provision in OHIO REV. CODE § 4112 that recognizes discrimination on the basis of age is Section 4112.02.  Therefore, by generally asserting that plaintiff was bringing a claim under § 4112, he had to be referring to the form of age-based employment discrimination identified by OHIO REV. CODE § 4112.02.  *Id.*, at 519, 610.  It held that the rules of statutory construction require that "where there is no manifest legislative intent that the general provision prevail over the specific provision, the specific provision applies."  *Id.*  There, as here, Section 4112.99 is the more general statute.  The *Bellian* court held that because the Ohio General

14

Assembly has not shown such an intent, the 180 day limitations period of Section 4112.02(N) must be applied.

Plaintiff here cited *Ferraro v. B.F. Goodrich Co.,* 149 Ohio App. 3d 301, 777 N.E.2d 282 (Ohio App. 9th Dist. 2002) to support the proposition that, because his claim is actionable under Section 4112.14, it should be governed by the six year statute of limitations period of that section. However, the court's decision in *Ferraro* (holding that age discrimination claims brought under Section 4101.17 [recodified as Section 4112.14 shortly after *Bellian* was decided] have a six year limitations period—not 180 days) *only* applies to Section 4112.14.

Not only did Plaintiff fail to bring his suit under Section 4112.14, he is barred from doing so by OHIO REV. CODE § 4112.02(N). Given the rules of statutory construction, the 180 day limitations period of OHIO REV. CODE § 4112.02 must apply. *Bellian*, 69 Ohio St. 3d at 520, 634 N.E.2d at 610, *State v. Volpe*, 38 Ohio St. 3d 191, 193, 527 N.E.2d 818, 820 (Ohio 1988). Plaintiff's state law claims are therefore time barred.

### III.   Plaintiff's Public Policy Claim.

Plaintiff asserts two public policy claims related to his work environment. Plaintiff alleges that he was terminated twice and demoted in violation of the State of Ohio's clear public policy proscribing age discrimination in employment that has been set forth in OHIO REV. CODE § 4112 and in Ohio common law (Docket No. 1, ¶ 18). Defendant contends that Plaintiff has failed to establish a public policy claim with respect to either claim.

Traditionally, Ohio has adhered to the employment-at-will doctrine, which permits an employer to terminate an employment relationship "at will for any cause, at any time whatsoever, even if done in gross or reckless disregard of an employee's rights." *Petrovski v. Federal Express Corp.*, 210 F. Supp.2d

943, 946 (N.D.Ohio 2002) (citations omitted).  The Ohio Supreme Court carved out an exception to the employment-at-will doctrine for situations where the employee's discharge contravenes public policy. *Id.* (*citing Kulch v. Structural Fibers, Inc.,* 78 Ohio St.3d 134, 677 N.E.2d 308 (1997) *recon. denied,* 79 Ohio St. 3d 1422, 680 N. E. 2d 158 (1997) (TABLE)).  In such a situation, the employee is entitled to bring an action in tort.  *Id.*

To maintain a claim, plaintiff must establish:  1) a clear public policy manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the "clarity element"); 2) that dismissals under circumstances similar to plaintiff's dismissal would jeopardize the public policy (the "jeopardy element"); 3) the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation element"); 4) the employer lacked an overriding legitimate business justification for the dismissal (the "overriding justification element").  *Id.* (*citing Kulch,* 78 Ohio St.3d at 151, 677 N.E.2d 308).  An employee can base the clear public policy on Ohio law, the Constitution of Ohio or the United States, administrative rules and regulations, or the common law.  *Gossett v. Byron Products, Inc*. 407 F. Supp.2d 918, 924 (S.D.Ohio 2005) (*citing Kulch,* 78 Ohio St.3d at 148-150; 677 N.E.2d at 320-21).  The clarity and jeopardy elements are questions of law to be decided by the court.  *Collins v. Rizkana*, 73 Ohio St. 3d 65, 69, 652 N. E. 2d 653, 657 (Ohio 1995).

In this case, Plaintiff based his claim on the public policy expressed in the ADEA.  The Magistrate agrees that the conduct Plaintiff alleges violates a clear public policy of the State of Ohio. It is unlawful to discharge an employee without just cause because of age.  OHIO REV. CODE § 4112.02 (Thomson/West 2007).  Having found that the first element of his claim satisfied, the court turns to the jeopardy element.

The Magistrate must determine if circumstances under which Plaintiff was dismissed would

jeopardize public policy. An analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful discharge claim. *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 244, 773 N.E.2d 526, 531 (Ohio 2002) *recon. denied*, 97 Ohio St. 3d 1427, 777 N.E. 2d 847 (2002 TABLE) (citations omitted). Where the sole source of the public policy opposing the discharge is a statute that provides the substantive right *and* remedies for its breach, "the issue of adequacy of remedies" becomes a particularly important component of the jeopardy analysis. *Id.* (*citing Collins,* 73 Ohio St.3d at 73, 652 N.E.2d 653). "If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy." *Id.* (*citing* 2 PERRITT, EMPLOYEE DISMISSAL LAW AND PRACTICE (4th ed. 1998) 3-4, Section 7.6). There is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. *Id.* (*citing Ross v. Stouffer Hotel Company (Hawaii)*, 76 Haw. 454, 464, 879 P.2d 1037 (1994); *Erickson v. Marsh & McLennan Company,* 117 N.J. 539, 562, 569 A.2d 793 (1990); *Kofoid v. Woodard Hotels*, 78 Ore.App. 283, 286-287, 716 P.2d 771 (1986)*; Walsh v. Consolidated Freightways*, 278 Ore. 347, 563 P.2d 1205(1977)). In that situation, the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct. *Id.*

It is here that Plaintiff's claim fails. The ADEA's remedial scheme is sufficiently comprehensive to ensure that the public policy embodied in ADEA will not be jeopardized by the absence of a tort claim for wrongful discharge in violation of public policy. Because Plaintiff has an available remedy based on federal and state statutes, Plaintiff's claim for wrongful discharge based on public policy must fail.

17

**IV.     Plaintiff's Breach of Duty Claim**

In his Fifth Claim (there is no Fourth Claim in Plaintiff's complaint), Plaintiff asserts that by virtue of his unique skill and position, Defendant had a duty of care to safeguard his employment position. Defendant, in a series of unjustified demotions and subsequent terminations, breached that duty (Docket No. 1, ¶ 21). This claim is not cognizable because the State of Ohio does not recognize such a duty of care for at-will employees. *See Bellinger v. Weight Watchers Gourmet Food,* 142 Ohio App. 3d 708, 756 N. E. 2d 1251 (2001). Plaintiff neither asserts nor proves that the parties had an employment contract. Absent a contract or circumstances that indicate an employment contract, Plaintiff cannot demonstrate that Defendant was bound by a duty to safeguard his employment. Therefore, this claim fails as a matter of law.

## <u>CONCLUSION</u>

For the above reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's complaint is dismissed.

IT IS SO ORDERED.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: 08/15/07

18